## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
### DIVISION OF ST. CROIX

JOSEPH ELLIOT JR.,           )
                                    )
                                    )
         Plaintiff,        )
                                    )        Civil No. 2021-291
      vs.               )
                                    )
FRANKIE ORTIZ, *et al.*,     )
                                    )
                                    )
        Defendants.    )

## ORDER and REPORT AND RECOMMENDATION

This matter is before the Court *sua sponte*.[1]  For the reasons explained below, the Court recommends that: (1) plaintiff's claims against the defendants in their official capacities be dismissed without prejudice; (2) plaintiff's claims against defendants Daniel and Mitchell in their individual capacities be dismissed with prejudice; and (3) plaintiff's claims against defendants Ortiz and Francis in their individual capacities be allowed to proceed.  Finally, the Court will order the United States Marshal Service to properly effectuate service on defendants.

## I.    BACKGROUND

On September 17, 2021, plaintiff Joseph Elliot Jr. filed his *pro se* complaint in this Court pursuant to 42 U.S.C. § 1983.  [ECF 1].  Plaintiff also filed a motion for leave to proceed *in forma pauperis* ("IFP").  [ECF 2].  On September 20, 2021, the Court issued a screening order finding that plaintiff "demonstrated his inability to pay the required court costs," but that the complaint "le[ft] out key details that the court requires before conducting a frivolity review."  [ECF 3] at 1, 3.[2]  The Court deferred ruling on plaintiff's IFP motion and directed plaintiff to file an amended complaint.  *Id.* at 4.

---

[1] On June 7, 2022, Judge Emile A. Henderson recused himself from this matter, [ECF 26], and the case was subsequently referred to the undersigned.

[2] When a plaintiff is proceeding IFP, the Court must screen the complaint for cognizable claims and *sua sponte* dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief

*Elliot v. Ortiz, et al.*
Civil No. 2021-291
Page 2

On October 25, 2021, plaintiff filed his first amended complaint ("FAC") against Virgin Islands Police Department ("VIPD") Officers Frankie Ortiz, Moses Francis, Naemah Daniel, and Lester Mitchell, both individually and in their official capacities. [ECF 5] at 1–2.[3] Therein, plaintiff states two claims for relief: (1) defendants Ortiz and Francis unlawfully detained plaintiff "without reasonable probability or probable cause" to make an arrest, in breach of human rights; and (2) defendants Daniel and Mitchell unlawfully detained plaintiff in the "holding cell for three hours without proper booking procedure allowing room for unreasonable governmental intrusion." *Id.* at 4. Plaintiff contends defendants acted under color of local territorial laws and that their actions violated his rights under the Fourth Amendment to the United States Constitution. *Id.* at 1–2. Plaintiff further avers that he has been unlawfully detained since his arrest on January 7, 2021, suffering "irreparable injury." *Id.* at 10–12. He does not request any specific relief; rather, plaintiff prays for "whatever reief [sic] this court find reasonable in justice seeking." *Id.* at 12.

According to the FAC, at approximately 12:30 p.m. on January 7, 2021, plaintiff was waiting at a bus stop when an unmarked police vehicle pulled up and officers jumped out with their guns drawn. *Id.* at 4. Officers searched plaintiff and handcuffed him, but never told him why he was being restrained or apprehended. *Id.* Plaintiff was taken to the Wilbur H. Francis police command station. *Id.* At approximately 1:00 p.m., defendants Daniel and Mitchell placed plaintiff in a holding cell, with no *Miranda*[4] warning. *Id.* at 1, 5. At 2:40 p.m., defendants Daniel and Mitchell came into the cell and showed plaintiff a warrant. *Id.* at 5. Plaintiff declined to make a statement and the officers exited the cell. *Id.*; *see also* [ECF 5-7] (Advise of Rights form dated January 7, 2021, 2:40 p.m.). While he was in the cell, plaintiff overheard defendants

---

from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A, 1915(e)(2)(B).

[3] The Court sets forth the facts in the light most favorable to plaintiff because "th[e] initial assessment of the *in forma pauperis* plaintiff's factual allegations must be weighted in favor of the plaintiff." *Ball v. Famiglio*, 726 F.3d 448, 452 (3d Cir. 2013) (alteration in original) (quoting *Denton v. Hernandez*, 504 U.S. 25, 32 (1992)).

[4] *Miranda v. Arizona*, 384 U.S. 436 (1966).

Francis and Ortiz conspiring to fabricate additional charges against him, and defendant Ortiz instructed defendant Francis to falsify additional charges. *Id.* at 7–8. At 3:00 p.m., plaintiff asked to use the restroom. *Id.* at 5. Defendant Francis escorted plaintiff to the restroom, then stated he was going to process plaintiff and took him to another area for fingerprinting. *Id.* Defendant Francis interrogated plaintiff and questioned and pressured him until plaintiff gave in and provided a DNA sample. *Id.* Defendant Francis also made plaintiff put his fingerprints on three arrest reports with no *Miranda* warning. *Id.*

The FAC includes exhibits related to several incidents where police were dispatched to the home of Ms. Latoya Joseph, and which appear to be connected to the arrests plaintiff now challenges. However, the documents are incomplete, and it is unclear whether plaintiff disputes, or concedes, any or all of the information contained therein. It is thus difficult to determine which facts contained in the exhibits plaintiff alleges in support of his claims and which facts he disputes as inaccurate. Accordingly, the Court provides the following summary of the attached materials by way of background only, and not for the truth of the matters asserted.

On July 2, 2020, Ms. Joseph reported that plaintiff attempted to break into her apartment. [ECF 5-1] at 1 (supplemental report by Officer Ambrose). She further stated she had a permanent restraining order against plaintiff. *Id.* at 2. A Virgin Islands Police Department Arrest Log Entry indicates plaintiff was arrested for the July 2, 2020, incident on January 7, 2021, at 3:15 p.m. [ECF 5-3] at 2. The arresting officer was defendant Francis. *Id.* An undated Probable Cause Fact Sheet recommends three charges for the July 2, 2020, incident. [ECF 5-5] at 1–3. The document appears to be authored and signed by defendant Francis; however, the date and signature line for the Assistant Attorney General is blank. *Id.* at 3.

On July 11, 2020, Ms. Joseph reported that plaintiff attempted to break into her apartment and assaulted her by throwing objects at her through the window. [ECF 5-2] at 2–4 (offense report by defendant Daniel). A supplement report by defendant Daniel states that a warrant for this

incident issued on November 12, 2020, and was executed by defendant Mitchell on January 7, 2021.    [ECF 5-2] at 7; *see also* [ECF 5-4] at 4 (copy of warrant and return); [ECF 5-2] at 1 (Virgin Islands Police Department Arrest Log Entry indicating plaintiff was arrested for the July 11, 2020, incident on January 7, 2021, at 1:26 p.m., by defendant Mitchell).    A document that appears to be the signatory page of an affidavit states probable cause for four charges, which match the charges listed on the warrant.    *Compare* [ECF 5-6] at 3, *with* [ECF 5-4] at 4.    The document is signed by defendant Daniel, and signed and dated by the notary public November 12, 2020; however, there is no notary stamp or seal.    [ECF 5-6] at 3.

On October 18, 2020, Ms. Joseph reported that plaintiff entered her apartment without her permission, cursed and yelled at her, and refused to leave.    [ECF 5-3] at 1 (supplement report by defendant Mitchell).    An affidavit signed by defendant Mitchell alleges probable cause for three charges related to the October 18, 2020, incident.    [ECF 5-6] at 1–2.    The affidavit is stamped, signed, and dated January 20, 2021, by the notary public.    *Id.* at 2.    Therein, defendant Mitchell states that on January 7, 2021, he received information from a concerned citizen as to plaintiff's whereabouts.    *Id.*    Defendant Mitchell and his partner located plaintiff and he "was detained and transported to the F'sted Police Station without incident."    *Id.*

On October 26, 2021, the Court issued an Order finding plaintiff had complied with the Court's September 20, 2021 Order "direct[ing] Plaintiff to file an amended complaint for initial screening . . . pursuant to 28 U.S.C. § 1915(e)(2)."    [ECF 6] at 1–2.    The Court did not screen the FAC; however, the Court granted plaintiff's motion to proceed IFP and directed the Clerk to "issue summons to the U.S. Marshal's office for service of defendants."    *Id.* at 2.[5]

---

[5] Although the Court granted plaintiff leave to proceed IFP on October 26, 2021, the docket indicates that the Clerk's office has continued to send plaintiff bills for the filing fee, with the most recent bill sent on October 3, 2022.    *See* [ECF 34].    This has created confusion over plaintiff's IFP status—in plaintiff's recent motion for appointment of counsel, he states that his complaint has been pending because he is indigent and unable to pay the filing fee to proceed with his § 1983 claims.    [ECF 35] at 1.    The Court hereby clarifies that plaintiff is proceeding IFP.    The Court will order the Clerk to cease sending billing statements to plaintiff.

On October 29, 2021, the Court issued summonses to defendants Francis, Ortiz, Daniel, and Mitchell. [ECFs 8, 9, 10, 11]. The record indicates all defendants were served on November 9, 2021. [ECFs 13, 14, 15, 16].[6] However, the process receipt for each defendant states that the person served was VIPD Officer Felipe Concepcion. *See id.*

On March 24, 2022, defendants filed a motion to dismiss for lack of jurisdiction, or, alternatively, for failure to state a claim. [ECF 19]. Defendants contend that the Court lacks personal jurisdiction over them because they were not properly served with process in either their individual or official capacities. [ECF 20] at 4–6. Further, the time for service has long expired, and there is neither good cause to extend the time nor any basis for the Court to grant a discretionary extension. *Id.* at 6–8. Defendants also argue for dismissal for failure to state a claim based on qualified immunity, and because the official capacity defendants are not "persons" who may be sued under § 1983. *Id.* at 8–20.

## II.    SCREENING

### A.  Standard of Review

Where a plaintiff has obtained leave to proceed *in forma pauperis*, a court must screen the complaint for cognizable claims and *sua sponte* dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see also* 28 U.S.C. § 1915A (requiring screening of a complaint in a civil action in which a prisoner seeks redress against a governmental employee or entity). In addition, a court may consider personal jurisdiction and venue *sua sponte* "when the defense is obvious from the face of the complaint and no further factual record is required to be developed." *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006) (citation omitted).

---

[6] The return for defendant Daniel was filed on November 12, 2021, and the returns for defendants Ortiz, Francis, and Mitchell were filed on November 10, 2021. [ECFs 14, 15, 16, 17].

*Elliot v. Ortiz, et al.*
Civil No. 2021-291
Page 6

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id*. at 327. A complaint is malicious when it "duplicates a pending suit." *Johnson v. City of Philadelphia*, 664 F. App'x 130, 131 (3d Cir. 2016); *accord Pittman v. Moore*, 980 F.2d 994, 995 (5th Cir. 1993) ("[I]t is 'malicious' for a pauper to file a lawsuit that duplicates allegations of another pending federal lawsuit by the same plaintiff."); *see also Lindell v. McCallum*, 352 F.3d 1107, 1109 (7th Cir. 2003) (stating that "malicious" in the context of §§ 1915(e) and 1915A(b) "is more usefully construed as intended to harass").

Whether a complaint fails to state a claim pursuant to § 1915(e)(2)(B)(ii) is governed by the same standard as Federal Rule of Civil Procedure 12(b)(6). *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)). Accordingly, a court must determine whether the complaint includes "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted). While courts construe *pro se* pleadings liberally, the litigant must still allege sufficient facts to support a valid claim. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013).

### B. Section 1983

Section 1983 is not a source of substantive rights. Instead, it provides a remedy to redress violations of federal law grounded in federal constitutional provisions or statutes. *Baker v. McCollan*, 443 U.S. 137, 145 n.3 (1979); *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006). In relevant part, § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable

> to the party injured in an action at law, suit in equity, or other proper
> proceeding for redress . . . .

42 U.S.C. § 1983.   Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the

violation of a right secured by the Constitution or laws of the United States and, second, that the

alleged deprivation was committed or caused by a person acting under color of state or territorial

law.   *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995) (citing *Gomez v. Toledo*,

446 U.S. 635, 640 (1980)).[7]

A civil rights complaint must state the conduct, time, place, and persons responsible.

*Boykins v. Ambridge Area Sch. Dist.*, 621 F.2d 75, 80 (3d Cir. 1980); *see also Wilson v. City of

Newark, N.J.*, 2007 WL 1135301, at *3 (D.N.J. Apr. 16, 2007) (noting that while "[a] federal court

may not apply a more heightened pleading standard than the liberal pleadings requirements of Fed.

R. Civ. P. 8(a) in civil rights cases . . . [t]he Third Circuit has held that a civil rights claim is

adequate where it states the conduct, time, place, and persons responsible" (citations omitted)).

When these elements are met, a complaint "is sufficiently precise to give [the defendants] notice

of the claims asserted."   *Hall v. Pennsylvania State Police*, 570 F.2d 86, 89 (3d Cir. 1978); *see

also Boykins*, 621 F.2d at 80 (where the court "can weigh the substantiality of the claim" based on

the facts alleged in the complaint, "[n]o more is required").   Conversely, a complaint that fails to

state the elements set forth in *Boykins* and *Hall* "does not in any way meet the Third Circuit's

standard for a legally adequate civil rights complaint."   *Evancho v. Fisher*, 423 F.3d 347, 353 (3d

Cir. 2005) (finding complaint failed to meet the liberal pleading standard of Rule 8(a) because the

plaintiff did not put forth any facts indicating that the named defendant was personally responsible

---

[7] A claim brought pursuant to 42 U.S.C. § 1983 is subject to the same statute of limitations as a personal injury claim in the state where the claim arose.   *Wallace v. Kato*, 549 U.S. 384, 387 (2007); *Cito v. Bridgewater Twp. Police Dep't*, 892 F.2d 23, 25 (3d Cir. 1989).   Plaintiff's claims against the defendants arose in the Virgin Islands; thus, the applicable statute of limitations is the Virgin Islands' statute of limitations for personal injury actions, which is two years.   5 V.I.C. § 31(5)(A).   The statute of limitations period begins to run "when the plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action."   *Genty v. Resolution Tr. Corp.*, 937 F.2d 899, 919 (3d Cir. 1991).   Plaintiff alleges the constitutional violations occurred on January 7, 2021; accordingly, plaintiff's § 1983 action, filed September 17, 2021, is timely.

for, let alone aware of, the allegedly improper conduct); *see also Hall*, 570 F.2d at 89 (a plaintiff's mere assertions that his rights have been violated "without facts upon which to assess the substantiality of the claim" is insufficient (citing *Rotolo v. Borough of Charleroi*, 532 F.2d 920 (3d Cir. 1976)); *cf. Iqbal*, 556 U.S. at 678 (Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" (citation omitted)).

## C. Liability of Defendants

"The 'color of state law element is a threshold issue' and thus there is no liability under § 1983 if the defendant is not acting under color of state law." *Vaughn v. Markey*, 813 F. App'x 832, 833 (3d Cir. 2020) (quoting *Groman*, 47 F.3d at 638). Here, plaintiff alleges the defendant VIPD officers violated his Fourth Amendment rights while acting under color of territorial local law.

### 1. Official Capacity Claims

As an initial matter, while the FAC asserts that the defendants are being sued in their official capacities, the allegations therein do not support such a claim.

Generally, "the Government of the Virgin Islands, its agencies, and its employees sued in their official capacities are not 'persons' under 42 U.S.C. § 1983." *Tobal v. Virgin Islands Police Dep't*, 2022 WL 136841, at *12 (D.V.I. Jan. 13, 2022) (citing *McCauley v. Univ. of the Virgin Islands*, 618 F.3d 232, 240 (3d Cir. 2010)); *see also Ngiraingas v. Sanchez*, 495 U.S. 182, 192 (1990) ("Congress did not intend to encompass a Territory among those 'persons' who could be exposed to § 1983 liability"); *accord Brow v. Farrelly*, 994 F.2d 1027, 1037 (3d Cir. 1993). Thus, while the Government of the Virgin Islands and its instrumentalities are not subject to liability under § 1983 as a matter of law, it is proper, to a limited extent, to name a territorial officer in his official capacity. Specifically, a plaintiff may sue an officer in his official capacity only for prospective injunctive relief. *McCauley*, 618 F.3d at 241 (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989) and *Brow*, 994 F.2d at 1037 n.12); *Iles v. de Jongh*, 638 F.3d

169, 177 (3d Cir. 2011); *Lockhart v. Matthew*, 203 F. Supp. 2d 403, 415 (D.V.I. 2002).   To state

a claim warranting such relief, a plaintiff must allege that the territorial official took some action

pursuant to a policy, custom, or practice of the territorial agency that resulted in a deprivation of

the plaintiff's constitutionally protected rights.   *See Hill v. Shelander*, 924 F.2d 1370, 1372 (7th

Cir. 1991).   Further, the complaint must "allege[] an ongoing violation of federal law and seek[]

relief properly characterized as prospective."   *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of

Maryland*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S.

261, 296 (1997)).

Here, plaintiff does not allege that a governmental custom or policy directly caused him

harm; thus, his § 1983 claims against the individual defendants in their official capacities must

fail.   *See Davis v. Thomas*, 2009 WL 3112318, at *6 (D. Del. Sept. 25, 2009) (dismissing § 1983

official capacity claim due to absence of "any allegation that a custom or policy established by the

[government entity] directly caused harm to [plaintiff]").   However, the Court is unable to

conclude, as a matter of law, that plaintiff cannot state a plausible claim for prospective injunctive

relief from an unconstitutional territorial policy, custom, or practice.   Accordingly, the Court

recommends that plaintiff's § 1983 claims against defendants in their official capacities be

dismissed without prejudice, permitting plaintiff to replead <u>if</u> he possesses a factual and legal basis

to do so.[8]

### 2.  Individual Capacity Claims

"[S]tate officials sued in their individual capacities are 'persons' for purposes of § 1983."

*Hafer v. Melo*, 502 U.S. 21, 23 (1991).   To state a claim against a defendant in his individual

---

[8] *Pro se* litigants are to be granted leave to file a curative amended complaint "even when a plaintiff does not seek leave to amend . . . unless such an amendment would be inequitable or futile."   *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004).   Conversely, a complaint that sets forth facts which affirmatively demonstrate that the *pro se* plaintiff has no right to recover is properly dismissed without leave to amend.   *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Askew v. Jones*, 160 F. App'x 140, 143 n.4 (3d Cir. 2005).

capacity under § 1983, a plaintiff must allege that the defendant was personally involved in the events or occurrences on which plaintiff's claims are based. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (explaining that "liability cannot be predicated solely on the operation of *respondeat superior*"); *Iqbal*, 556 U.S. at 676 (a plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"). Personal involvement can be demonstrated through "allegations of personal direction or of actual knowledge and acquiescence," but such allegations must be made with appropriate particularity. *Rode*, 845 F.2d at 1207.

Here, the FAC sufficiently pleads defendants' personal involvement in the allegedly unconstitutional conduct.   First, plaintiff alleges defendants Daniel and Mitchell "both acted like an arrest was being made by unlawfully detaining plaintiff in [the] police holding cell upon his arrival at the Wilbur H. Francis police command station" and held plaintiff in the cell for three hours without proper booking procedure.   [ECF 5] at 1–2.   In addition, plaintiff alleges defendant Daniel provided misinformation on the warrant affidavit and lied to the magistrate judge by listing a wrong and unfounded charge for first degree burglary.   *Id.* at 7, 9.   Next, plaintiff alleges defendants Ortiz and Francis conspired to fabricate additional charges against him, and that defendant Ortiz instructed defendant Francis to falsify the additional charges.   *Id.* at 1–2, 7–8. According to plaintiff, defendant Francis forged three false arrest reports against him, altered the arrest log to fabricate an additional case against plaintiff, and submitted falsified information on a defective probable cause fact sheet.   *Id.* at 2, 5, 8.   Plaintiff further alleges defendant Francis interrogated him with no *Miranda* warning.   *Id.* at 5.   Plaintiff avers these events took place on January 7, 2021, between approximately 12:30–4:37 p.m.   *Id.* at 4–7.

In sum, plaintiff identifies the allegedly illegal conduct on which his claims are based, specifies the time and place of the events, and describes how each defendant was personally involved.   *Boykins*, 621 F.2d at 80; *Hall*, 570 F.2d at 89.   The Court therefore finds the FAC "is

sufficiently precise to give [the individual capacity defendants] notice of the claims asserted."

*Hall*, 570 F.2d at 89.

### D. Alleged Constitutional Violations

Having satisfied the requirement of identifying a "person acting under color of state law" as to his claims against defendants in their individual capacities, the Court must also determine whether plaintiff sufficiently alleges a violation of a right secured by the Constitution or laws of the United States. Here, plaintiff alleges that (1) defendants Daniel and Mitchell unlawfully detained him in a holding cell for three hours without proper booking procedures, and (2) defendants Francis and Ortiz used forged and falsified information to arrest him without probable cause. [ECF 5] at 1–4. The Court construes plaintiff's allegations as Fourth Amendment claims for unlawful detention and false arrest.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures," and provides that "no warrants shall issue, but upon probable cause . . . ." U.S. CONST. amend. IV. "A seizure of the person within the meaning of the Fourth . . . Amendment[] occurs when, taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." *Kaupp v. Texas,* 538 U.S. 626, 629 (2003) (internal quotations and citation omitted). "[T]he 'reasonableness' of a particular seizure depends not only on *when* it is made, but also on *how* it is carried out." *Graham v. Connor*, 490 U.S. 386, 395 (1989) (citing *Tennessee v. Garner*, 471 U.S. 1, 7–8 (1985)).

Here, plaintiff's claims for unlawful detention and false arrest both require plaintiff to show that the defendants lacked probable cause to believe that plaintiff committed a crime. *Cost v. Borough of Dickson City*, 858 F. App'x 514, 518 (3d Cir.), *cert. denied sub nom. Cost v. Borough of Dickson City, Pennsylvania*, 142 S. Ct. 464 (2021); *Simonson v. Borough of Taylor*, 839 F. App'x 735, 738 (3d Cir. 2020), *cert. denied*, 142 S. Ct. 112 (2021).

*Elliot v. Ortiz, et al.*
Civil No. 2021-291
Page 12

1.  Unlawful Detention

"To assert unlawful detention under the Fourth Amendment, Plaintiff must allege that he was seized within the meaning of the Fourth Amendment, and that police officers did not have probable cause to seize him."  *Kauffman v. Barbagello*, 2013 WL 6388487, at *8 (M.D. Pa. Dec. 5, 2013) (citing *James v. City of Wilkes–Barre,* 700 F.3d 675, 682 (3d Cir. 2012)); *see also Dixon v. Williams*, 2015 WL 5695923, at *5 (M.D. Pa. Sept. 28, 2015) ("The Fourth Amendment's requirement that searches and seizures be founded on an objective justification governs all seizures of the person, from formal arrests to detentions short of traditional arrest."); *Kaupp*, 538 U.S. at 630 (noting that the Supreme Court has never "sustained against Fourth Amendment challenge the involuntary removal of a suspect from his home to a police station and his detention there for investigative purposes . . . absent probable cause or judicial authorization" (alteration in original) (citation omitted)).

Here, plaintiff alleges that defendants Daniel and Mitchell unlawfully detained him in a holding cell for three hours without proper booking procedures.  [ECF 5] at 1, 4.  According to the FAC, plaintiff was apprehended at a bus stop at approximately 12:30 p.m. and searched and handcuffed, but officers never stated why he was being restrained or apprehended.  *Id.* at 4.[9] After defendant Daniel arrived at the scene, plaintiff was transported to the police station and placed in a holding cell at approximately 1:00 p.m.  *Id.* at 4–5.  At 2:40 p.m., defendants Daniel and Mitchell came into his cell and showed him a warrant.  *Id.* at 5.  Defendants asked if he wanted to make a statement and plaintiff declined.  *Id.*  Defendants then exited the cell.  *Id.*

Liberally construed, the FAC fails to state a plausible claim for unlawful detention. Although plaintiff alleges defendants Daniel and Mitchell unlawfully detained him in a holding

---

[9] Plaintiff does not identify the officer(s) who seized him at the bus stop and allegedly failed to state why he was being apprehended.

cell, plaintiff fails to allege sufficient facts to support a plausible inference that the defendants lacked probable cause to seize him. Plaintiff himself states that the defendants showed him a warrant and asked if he wanted to make a statement. [ECF 5] at 5. Additionally, plaintiff alleges that defendant Daniel was "the lead affiant in this case." *Id.* at 4–5. "In the ordinary criminal case, arrest and detention of a suspect is reasonable if it is supported by probable cause, as determined by the judge who . . . issues an arrest warrant . . . ." *Coley v. Lord*, 2013 WL 3801664, at *4 (D. Del. June 27, 2013) (citing *Gerstein v. Pugh,* 420 U.S. 103, 111–14 (1975) and *Burt v. Ferrese,* 871 F.2d 14 (3d Cir. 1989)); *see also Fiore v. City of Bethlehem*, 510 F. App'x 215, 220 (3d Cir. 2013) ("[T]he fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner or, as we have sometimes put it, in 'objective good faith.'" (quoting *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012))). Here, the FAC includes a copy of an arrest warrant issued on November 12, 2020. [ECF 5-4] at 4. The warrant return indicates that defendant Mitchell received the warrant on November 12, 2020, and arrested plaintiff on January 7, 2021. *Id.* Though plaintiff makes a conclusory allegation that defendant Daniel provided misinformation on the warrant affidavit and lied to the magistrate judge by listing a wrong and unfounded charge for first degree burglary, plaintiff fails to plead specific factual allegations to support this assertion. [ECF 5] at 7, 9; *see Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) ("[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." (citation omitted)).

Thus, based on the facts alleged, plaintiff cannot state a plausible Fourth Amendment claim for unlawful detention because it cannot be reasonably inferred that defendants Daniel and Mitchell lacked probable cause to seize and detain him. *See Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir. 1997) (stating that while the existence of probable cause in a § 1983 action is typically a question of fact, "[t]he district court may conclude in the appropriate case . . . that probable cause did exist as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would

not support a contrary factual finding"); *see also Tennessee v. Garner*, 471 U.S. at 8–9 (the question [i]s whether the totality of the circumstances justifie[s] a particular sort of . . . seizure"). The Court therefore recommends that this claim be dismissed with prejudice. *See, e.g.*, *Fiore*, 510 F. App'x at 220–22 (affirming summary judgment for defendants based on district court's finding of qualified immunity because it was not clearly established that defendants lacked probable cause to arrest; defendants relied on prosecutor's legal opinion that arrest was warranted and obtained a warrant, and plaintiff failed to show that no officer could have reasonably relied on warrant's determination of probable cause).

2. False Arrest

"To state a claim for false arrest under the Fourth Amendment, a plaintiff must establish: (1) that there was an arrest; and (2) that the arrest was made without probable cause." *James*, 700 F.3d at 680 (citations omitted). "Probable cause exists if, 'at the moment the arrest was made . . . the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that [the suspect] had committed or was committing an offense.'" *Cost*, 858 F. App'x at 519 (alterations in original) (quoting *Wright v. City of Phila.*, 409 F.3d 595, 602 (3d Cir. 2005)). Thus, "[t]he proper inquiry in a section 1983 claim based on false arrest . . . is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." *Groman*, 47 F.3d at 634 (second alteration in original) (citation omitted).

Here, Plaintiff alleges defendants Ortiz and Francis illegally seized him when they arrested him on additional charges without probable cause. [ECF 5] at 4. Specifically, the FAC alleges that while plaintiff was detained in the holding cell, plaintiff overheard a conversation between defendants Ortiz and Francis wherein they conspired to falsify charges against plaintiff. *Id.* at 7–8. According to plaintiff, defendant Ortiz instructed defendant Francis to falsify two additional charges. *Id.* at 8. While plaintiff uses the word "charges," it appears plaintiff is arguing that,

following his arrest by defendants Daniel and Mitchell made pursuant to the warrant, he was then arrested by defendant Francis without a warrant on multiple charges in two additional cases.[10]  *Id.* Plaintiff further contends that defendant Francis deceived the superior court by submitting false information on an undated probable cause fact sheet that failed to state how the information was obtained, or whether the information was available at the time plaintiff was in police custody, to justify "probable cause for arrest for the two additional charge[s] beside[s] the arrest warrant." *Id.*  Thus, unlike plaintiff's unlawful detention claim, in this claim, plaintiff alleges he was illegally arrested without a warrant supported by probable cause.

"Generally, the existence of probable cause is a factual issue."  *Groman*, 47 F.3d at 635 (citation omitted).  Here, it is unclear from the allegations set forth in the FAC, and the incomplete exhibits attached thereto, what "facts and circumstances [were] within [the defendants'] knowledge and of which they had reasonably trustworthy information" at the time of plaintiff's alleged false arrests.[11]  *Cost*, 858 F. App'x at 519.  Although development of the factual record may generate new considerations bearing on the Court's analysis, at this juncture, the Court cannot conclude that probable cause exists as a matter of law.  *See Sherwood*, *supra*, 113 F.3d at 401. The Court therefore finds that, while not a model of clarity, liberally construed, the FAC pleads a plausible claim for false arrest.  *See Hall*, 570 F.2d at 89 n.1 ("While the pleading is not artfully drawn, the principal contentions are adequately set forth."); *Fowler*, 578 F.3d at 213 ("A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts

---

[10] SX-2021-CR-11 and SX-2021-CR-12

[11] For example, the FAC attaches a Probable Cause Fact Sheet regarding the July 2, 2020, incident that appears to be authored and signed by defendant Francis.  [ECF 5-5] at 1–3.  However, the document is undated, and the date and signature line for the Assistant Attorney General is blank.  *Id.* at 3.  The FAC does not attach any police reports authored by the named defendants for the July 2, 2020, incident.  As to the October 18, 2020, incident, the FAC attaches a supplement report and a probable cause affidavit authored by defendant Mitchell.  [ECF 5-3]; [ECF 5-6] at 1–2.  However, the affidavit is signed and stamped by the notary public January 20, 2021—two weeks after plaintiff's alleged false arrest.  *Id.* at 2.  And, neither of these documents establish what facts and circumstances were within defendant Ortiz's or defendant Francis's knowledge at the time they allegedly conspired to arrest plaintiff.

*Elliot v. Ortiz, et al.*
Civil No. 2021-291
Page 16

alleged is improbable and that a recovery is very remote and unlikely." (quoting *Bell Atlantic Corp.*

*v. Twombly*, 550 U.S. 544, 556 (2007))).

Plaintiff also alleges a related claim that his continued detention following his arrest by

defendant Francis is an unlawful violation of his personal liberty.   [ECF 5] at 4, 11.   The Court

construes this as raising a Fourth Amendment false imprisonment claim.   "[W]here the police lack

probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment

based on a detention pursuant to that arrest."   *Groman*, 47 F.3d at 636 (citation omitted).   Such a

claim "is grounded in the Fourth Amendment's guarantee against unreasonable seizures."   *Id.*

(citations omitted) (noting that if a jury found in plaintiff's favor on his false arrest claim, it could

also find that he "suffered a violation of his constitutional rights by virtue of his detention pursuant

to that arrest").   Conversely, the Supreme Court has "made it clear [that] an arrest based on

probable cause [cannot] become the source of a claim for false imprisonment."   *Id.* (citing *Baker*,

443 U.S. at 143–44).[12]   "To state a claim for false imprisonment, a plaintiff must establish: (1)

that she was detained; and (2) that the detention was unlawful."   *James*, 700 F.3d at 682–83 (citing

---

[12] However, as this Court recently noted in *Tobal*, the "general proposition that a warrantless arrest based upon probable cause does not support a [§] 1983 claim for *false arrest* does not exclude all potential § 1983 actions for *wrongful detentions*."   2022 WL 136841, at *18 (alterations in original) (internal quotations and citations omitted). Similarly, in *Manuel v. City of Joliet, Ill.*, 580 U.S. 357, 137 S. Ct. 911 (2017), the Supreme Court held that the Fourth Amendment governs a claim for unlawful pretrial detention even beyond the start of legal process.   The Court explained:

> [P]retrial detention can violate the Fourth Amendment not only when it precedes, but also when it follows, the start of legal process in a criminal case.   The Fourth Amendment prohibits government officials from detaining a person in the absence of probable cause.   That can happen when the police hold someone without any reason before the formal onset of a criminal proceeding.   But it also can occur when legal process itself goes wrong—when, for example, a judge's probable-cause determination is predicated solely on a police officer's false statements.   Then, too, a person is confined without constitutionally adequate justification.   Legal process has gone forward, but it has done nothing to satisfy the Fourth Amendment's probable-cause requirement.   And for that reason, it cannot extinguish the detainee's Fourth Amendment claim—or somehow, as the Seventh Circuit has held, convert that claim into one founded on the Due Process Clause.   If the complaint is that a form of legal process resulted in pretrial detention unsupported by probable cause, then the right allegedly infringed lies in the Fourth Amendment.

*Id.* at 918–19.   The Court therefore found that the plaintiff "stated a Fourth Amendment claim when he sought relief not merely for his (pre-legal-process) arrest, but also for his (post-legal-process) pretrial detention."   *Id.* at 919.

*Wallace,* 549 U.S. at 389 ("The sort of unlawful detention remediable by the tort of false imprisonment is detention *without legal process* . . . ." (citations omitted))).

Here, the Court finds that the FAC states allegations sufficient to permit plaintiff's false arrest claim to proceed against defendants Ortiz and Francis.   Further, because plaintiff alleges his arrest occurred without legal process and that he has remained detained since his arrest, the Court also finds that plaintiff's false imprisonment claim should be permitted to proceed.[13, 14]

## III.    SERVICE

### A.  Legal Standards

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."   *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987).   Federal Rule of Civil Procedure 4(m) requires service of a summons and complaint on all named defendants within 90 days of filing the complaint.   "If a defendant is not served within 90 days . . . the court . . . must dismiss the action without prejudice

---

[13] To the extent plaintiff argues his arrest and detention constitute a breach of human rights, [ECF 5] at 4, the Court declines to consider this argument further.   *See Moore v. Pennsylvania*, 2022 WL 1128992, at *5 (E.D. Pa. Apr. 14, 2022) ("District courts throughout this Circuit have routinely dismissed claims brought under the Universal Declaration of Human Rights with prejudice for failure to state a claim or as legally frivolous." (collecting cases)), *aff'd*, 2022 WL 7375509 (3d Cir. Oct. 13, 2022).

[14] To the extent that the FAC makes any claims alleging a violation of plaintiff's *Miranda* rights, the Court declines to address such claims further.   The District of New Jersey's reasoning on this point is instructive.   In *Tucker v. New York Police Dep't*, 2008 WL 4935883, at *8 (D.N.J. Nov. 18, 2008), the court rejected the plaintiff's § 1983 claim alleging the defendant officers interrogated him with no *Miranda* warning and ignored his request for counsel.   The court explained:

> To the extent Plaintiff seeks to assert a claim for damages based directly upon questioning or acquisition of a statement in violation of his *Miranda* rights, as opposed to the use of such a statement at trial, he fails to state a claim.   "[V]iolations of the prophylactic *Miranda* procedures do not amount to violations of the Constitution itself. . . .   The right protected under the Fifth Amendment is the right not to be compelled to be a witness against oneself in a criminal prosecution, whereas the 'right to counsel' during custodial interrogation recognized in [*Miranda*] is merely a procedural safeguard and not a substantive right."   *Giuffre v. Bissell,* 31 F.3d 1241, 1256 (3d Cir. 1994) (citations omitted).   Thus, Plaintiff also has no free-standing Fifth Amendment claim for denial of the right to counsel during questioning.   *See James v. York County Police Dept.*, 160 Fed. Appx. 126, 133, 2005 WL 3313029, 5 (3d Cir. 2005) (citing *Giuffre*).

*Id.*   The court "express[ed] no opinion as to whether the use of any statement obtained from Plaintiff violated the *Miranda* rule or his constitutional right to counsel."   *Id.* at *9.

against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). In addition, "if the plaintiff shows good cause for the failure [to timely serve], the court must extend the time for service for an appropriate period." *Id.* While it is generally the plaintiff's responsibility to effectuate service, when the Court grants IFP status, the Court must order service to "be made by a United States marshal or deputy marshal or by a person specially appointed by the court." Fed. R. Civ. P. 4(c)(3); 28 U.S.C. § 1915(d) ("The officers of the court shall issue and serve all process, and perform all duties in such cases.").

In an action against an individual, service may be made by: "(A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e)(2). In an action against a state or local government employee in their official capacity, the Federal Rules require service on the chief executive officer of the governmental organization, or service in the manner prescribed by state law for such a defendant. Fed. R. Civ. P. 4(j)(2). Under Virgin Islands law, when suing the Government of the Virgin Islands or its agencies, a plaintiff must serve the Governor and the Attorney General. V.I. R. Civ. P. 4(i)(1). Additionally, when suing a government employee in his official capacity, service must be made upon the Governor, the Attorney General, the chief executive officer of the individual agency, and the named employee. V.I. R. Civ. P. 4(i)(2)(A).

An action against a government official in their official capacity is necessarily an action against the government. *See, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (holding that "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"). Thus, because defendants here are sued in their official capacity as officers of the VIPD,

the suit is against the Government of the Virgin Islands, and the Governor must be served.[15]   *See*
Fed. R. Civ. P. 4(j)(2) (requiring service on chief executive officer); 48 U.S.C. §1591 ("The
executive power of the Virgin Islands shall be vested in an executive officer whose official title
shall be the 'Governor of the Virgin Islands.'"); *Tobal*, 2022 WL 136841, at *8 ("When the
Government of the Virgin Islands, one of its agencies, or a government official is named as a
Defendant, courts have repeatedly held that the Governor must be served with process.");
*Christopher v. Dir. of Virgin Islands Bureau of Internal Revenue*, 2014 WL 3733774, at *2 (D.V.I.
July 29, 2014) ("when the Government of the Virgin Islands or an agency of the Government of
the Virgin Islands is a named defendant, the Governor—as chief executive officer—must be
served"); *Thomas v. Bonanno*, 2013 WL 3958772, *8 (D.V.I. July 30, 2013) ("Virgin Islands law
does not admit of any means of serving the government except by serving the chief executive
officer—that is, the Governor of the Virgin Islands.").

**B.  Discussion**

The Court recognizes that *pro se* litigants are generally subject to the same law and rules
of court as those represented by counsel.   *See, e.g.*, *Constr. Technicians v. Zurich Am. Ins. Co.*,
61 V.I. 153, 157 n.3 (2014) ("*pro se* status allows for a less stringent standard but does not allow
a party to ignore or defy the rules of procedural and substantive law" (internal quotations and
citation omitted)); *Briscoe v. Klaus*, 538 F.3d 252, 258–59 (3d Cir. 2008) ("it is logical to hold a
pro se plaintiff personally responsible for delays in his case because a pro se plaintiff is solely
responsible for the progress of his case").   Here, however, "[a]s a litigant proceeding in forma
pauperis, [plaintiff] was not responsible for the service of process." *Crock v. Astrue*, 332 F. App'x
777, 778 (3d Cir. 2009) (citing 28 U.S.C. § 1915(d) and *Byrd v. Stone*, 94 F.3d 217, 219 (6th Cir.
1996)).   While the Court entered an order directing the Clerk to "issue summons to the U.S.

---

[15]  While the Court recommends dismissal of plaintiff's official capacity claims, the Court will direct the Clerk to mail
a courtesy copy of the summons and plaintiff's amended complaint to the Governor of the Virgin Islands.

*Elliot v. Ortiz, et al.*
Civil No. 2021-291
Page 20

Marshal's office for service of defendants," the Marshal failed to make personal service on the defendants.  [ECF 6] at 2.[16, 17]    Instead, the Marshal served VIPD Officer Felipe Concepcion, who is not a named defendant in this case.  *See* [ECFs 13, 14, 15, 16].    Nor is there any indication that Officer Concepcion is "an agent authorized by appointment or by law to receive service of process" on behalf of defendants.  Fed. R. Civ. P. 4(e)(2)(C); *see Tobal*, 2022 WL 136841, at *9 ("Mere acceptance of service by an employee does not establish that the employee was authorized to accept service.").    The Court will not fault plaintiff for improper service when "plaintiff had no control over the service of process on the defendants."  *Medina-Claudio v. Pereira*, 443 F. Supp. 2d 208, 213 (D.P.R. 2006) (finding delay of Marshals in effectuating service constitutes "good cause" under Rule 4(m)).

Further, the Court did not screen plaintiff's FAC before ordering service.  Had such screening occurred and an order issued, the Court might have noted that an action against state or local government employees in their official capacities requires service on the governmental organization.  *See* Fed. R. Civ. P. 4(j)(2); V.I. R. Civ. P. 4(i).    But no order was entered directing the Marshal to make service on the Governor, the Attorney General, or the chief executive officer of the VIPD.  *See id.*    These circumstances may constitute "good cause" for an extension of time for service pursuant to Rule 4(m).  *See Caterbone v. Lancaster Cnty. Prison*, 293 F. App'x 867, 871 (3d Cir. 2008) (finding dismissal for failure to serve improper because "as a litigant proceeding [IFP], [plaintiff] was not responsible for the service of process"; once plaintiff filed his amended

---

[16] The record is unclear as to whether plaintiff completed and submitted summonses for the defendants.  However, the FAC lists the four named defendants and their address at the Wilbur H. Francis Command Police Station on St. Croix.  [ECF 5] at 3.  "Thus, the District Court was obligated to 'order that service be made by a United States marshal or deputy marshal or by a person specially appointed by the court.'"  *Crock*, 332 F. App'x at 778 (quoting Fed. R. Civ. P. 4(c)(3)); *see also Byrd*, 94 F.3d at 219 ("the court is obligated to issue plaintiff's process to a United States Marshal who must in turn effectuate service upon the defendants . . . once reasonable steps have been taken to identify for the court the defendants [sic] names in the complaint").

[17] While no counsel has entered a notice of appearance for defendants, defendants evidently received notice of plaintiff's suit at some point, as Attorney Venetia Velazquez filed a motion to dismiss on their behalf.  *See* [ECF 19].  However, "[a]lthough notice underpins [Fed. R. Civ. P.] 4 concerning service, notice cannot by itself validate an otherwise defective service."  *Grand Ent. Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 492 (3d Cir. 1993).

*Elliot v. Ortiz, et al.*
Civil No. 2021-291
Page 21

complaint, "the District Court was obligated to appoint a United States marshal to effect service");

*Welch v. Folsom*, 925 F.2d 666, 670 (3d Cir. 1991) (where court did not dismiss IFP complaint as frivolous or malicious, "the court was compelled to proceed in compliance with 28 U.S.C. § 1915(c), which unequivocally states: '[t]he officers of the court shall issue and serve all process, and perform all duties in [*in forma pauperis*] cases'" and court therefore erred in dismissing for failure to serve (alterations in original)).[18]

In sum, the record does not support a finding that plaintiff is personally responsible for failing to properly serve defendants.   *See Muhammad v. Dep't of Corr.*, 645 F. Supp. 2d 299, 313 n.16 (D.N.J. 2008) ("plaintiff should not be penalized by having his or her action dismissed for failure to effect service where the U.S. Marshal or the court clerk has failed to perform the duties required of each of them"), *aff'd sub nom. Muhammad v. NJ Dep't of Corr.*, 396 F. App'x 789 (3d Cir. 2010).   Given the Third Circuit's binding precedent and its endorsement of a liberal interpretation of Rule 4, the Court will provide an extension of time to properly effectuate service on defendants.

## IV.    CONCLUSION

Accordingly, for the foregoing reasons, the Court RECOMMENDS that:

1. Plaintiff's claims against defendants in their official capacities be DISMISSED WITHOUT PREJUDICE for failure to state a claim;

2. Plaintiff's claims against defendants Daniel and Mitchell in their individual capacities be DISMISSED WITH PREJUDICE for failure to state a claim;

3. Plaintiff's claims against defendants Ortiz and Francis in their individual capacities be allowed to proceed; and

---

[18]  In *Welch*, the Third Circuit relied in part on two out of circuit decisions: In *Rochon v. Dawson*, 828 F.2d 1107, 1110 (5th Cir. 1987), the Fifth Circuit found that "a plaintiff proceeding in forma pauperis is entitled to rely upon service by the U.S. Marshals and should not be penalized for failure of the Marshal's Service to properly effect service of process, where such failure is through no fault of the litigant."   Similarly, in *Romandette v. Weetabix Co., Inc.*, 807 F.2d 309, 311 (2nd Cir. 1986), the Second Circuit reasoned that "the interests of justice, informed by a liberal interpretation of Rule 4, are best served by allowing this litigant to rely on the personal service, albeit untimely, ultimately effected by the Marshal's Service."

*Elliot v. Ortiz, et al.*
Civil No. 2021-291
Page 22

4. Defendants' motion to dismiss be denied without prejudice, pending proper service of the First Amended Complaint.

In addition, it is hereby ORDERED as follows:

1. The Clerk of Court is DIRECTED to mail plaintiff two Summonses in a Civil Action (form VI-AO 440), one for defendant Ortiz and one for defendant Francis;

2. Plaintiff is DIRECTED to complete a summons form for each defendant and RETURN the completed summons forms to the Clerk of Court no later than December 14, 2022;[19]

3. Upon receipt of the completed summons forms, the Clerk of Court is DIRECTED to issue summonses and deliver the summonses and copies of the amended complaint to the United States Marshal Service;

4. The United States Marshal is DIRECTED to serve the summons and a copy of the amended complaint on each defendant pursuant to Rule 4(c)(3) of the Federal Rules of Civil Procedure and file proof of service with the Clerk of Court;[20]

5. Upon issuing the summonses, the Clerk of Court shall mail a courtesy copy of this Order and plaintiff's amended complaint by regular mail to the Governor of the Virgin Islands;[21] and

6. Upon issuing the summonses, the Clerk of Court shall mail a courtesy copy of this Order and plaintiff's amended complaint by regular mail to the Attorney General for the Territory of the Virgin Islands.

It is further ORDERED that the Clerk's office shall cease mailing invoices for the filing fee to plaintiff.   *See* [ECF 6] (order granting plaintiff leave to proceed *in forma pauperis*).

**Dated:** November 15, 2022                        S\_____

**RUTH MILLER**
United States Magistrate Judge

---

[19] Plaintiff must complete the caption and the name and address sections.   Plaintiff may return the summons by U.S. mail or may hand-deliver them to the Clerk's office: District Court of the Virgin Islands, St. Croix Division, 3013 Estate Golden Rock, Suite 219, St. Croix, VI 00820.  The Clerk of Court is directed to mail paper forms.  The electronic version can be found at: http://www.vid.uscourts.gov/sites/vid/files/forms/AO_440.pdf.

[20] *See* Fed. R. Civ. P. 4(c)(3) (where a court authorizes a plaintiff to proceed *in forma pauperis* under § 1915, service must be "made by a United States marshal or deputy marshal or by a person specially appointed by the court"); *Crock*, 332 Fed. Appx. at 778 (stating the district court is "obligated" to order that the United States Marshal effectuate service).

[21] Federal Rule of Civil Procedure 4(j)(2) requires service of a copy of the summons and complaint to the governmental organization's chief executive officer; it does not require that a summons must be issued in the name of the Governor of the Virgin Islands.   *See Oliver v. Virgin Islands Bureau of Internal Revenue*, 2020 WL 3085909, at *3 n.5 (D.V.I. June 10, 2020).